# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| RODNEY BLAND, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>HC BECK and RENTAL SERVICE )<br>CORPORATION, )<br>)<br>Defendants )<br>)<br>vs. )<br>)<br>AHAL CONTRACTING CO., INC. and )<br>VOLK CONSTRUCTION CO., )<br>)<br>Third-Party Defendants. ) | Case No. 4:05CV1205SNL |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant Rental Service Corp.'s (RSC) motion to strike plaintiff's expert Michael Leshner (#52), filed July 28, 2006. Defendant HC Beck filed a separate motion to strike Michael Leshner which incorporates by reference defendant RSC's motion and memorandum in support (#53), filed August 1, 2006. Responsive pleadings have been filed. On November 3, 2006 this Court held a bench hearing and heard testimony by interested parties regarding the pending motion to strike.[1] This matter is now ripe for disposition. This cause of action is set for trial on the Court's trial docket of April 30, 2007.

The underlying facts relevant to the event giving rise to this lawsuit are basically undisputed for purposes of the pending motion. On or about February 23, 2001, plaintiff was

---

[1]The testimony consisted primarily of examination by counsel of plaintiff's expert as to his qualifications and basis for his expert causation opinion(s); as well as oral argument by counsel.

working as an ironworker for third-party defendant Ahal Contracting (Ahal). He was assigned to work at an A.T.&T. expansion construction project located in Bridgeton, Missouri. Defendant HC Beck was the general contractor on the A.T.&T. expansion project at all relevant times. Prior to the accident in question, HC Beck rented two (2) 250,000 BTU LPG commercial convection drum space heaters from defendant RSC to warm the interior of the work site and allow for the pouring of the concrete slab flooring during cold weather. In providing these heaters, along with the rental agreement, RSC also furnished a 2-page safety bulletin to HC Beck containing various warnings about working around the heaters.

On February 23, 2001 plaintiff alleges that he was walking past one of these heaters, about three (3) to four (4) feet from it, when his work pants suddenly caught fire. Plaintiff suffered severe burns to his left leg and hand which required an extensive initial stay in the hospital, subsequent multiple surgeries, skin grafts, prolonged physical therapy, and narcotic pain medication. Plaintiff filed this lawsuit asserting claims of negligence and strict liability in that defendants failed to warn of the dangers of "dispensing super-heated air, greater than that needed to start cotton on fire", and that the heater was "defective and unreasonably dangerous when put to a reasonably anticipated use".

The primary issue in this case is one of causation. The parties dispute exactly how plaintiff's pants caught fire. Plaintiff asserts that the pants simply became inflamed as he walked past the heater; defendants assert that the accident could not have happened the way plaintiff claims.

Plaintiff intends to offer the expert testimony of Mr. Michael Leshner on the issue of causation. It appears that Mr. Leshner intends to testify (based upon his report) that 1) the subject heater was being used in accordance with defendant RSC's safety bulletin; 2) the subject

2

heater was hazardous and defective as used; 3) the subject heater ignited the plaintiff's clothing; 4) warnings provided with the subject heater were inadequate and failed to meet industry standards for warnings; 5) the subject heater was defective because it failed to have guards[2]; and that plaintiff did nothing to contribute to the accident. Defendants contend that Mr. Leshner's testimony should be stricken because he is not qualified, under Rule 701 Federal Rules of Civil Procedure, as an expert to give an opinion regarding product defects, guarding, and/or warnings associated with commercial convection drum space heaters. Defendants further contend that Mr. Leshner's causation opinion(s) fail to meet the standards established by Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and its progeny because he failed to perform any testing or analysis in this case as to the subject heater, plaintiff's pants, and/or the alleged ignition of cotton material due to variable distances from the subject heater. Plaintiff asserts that Leshner should be allowed to testify because of his vast experience and education in engineering and his understanding of basic principles of physics. Plaintiff further asserts that Leshner's lack of testing does not go to the issue of admissibility, but rather only to the issue of credibility and weight; issues for a jury to decide. Finally, plaintiff argues that simply because defendants' experts did their own testing of similar heaters and cotton material under similar circumstances and came to a different causation conclusion than Leshner is still not a basis for finding his testimony inadmissible, i.e.; again the differing expert causation opinions are for a jury to resolve.

---

[2]There is some dispute as to the specific nature of this aspect of Mr. Leshner's purported testimony; i.e.; whether the "defect" was a design-defect because there were no guards actually incorporated as part of the heater or whether the "defect" was that there were no guards placed at a certain distance from the heater so as to create a "safety zone" between the heater and anyone walking by it.

Michael Leshner is a forensic engineer having received his degree in mechanical engineering in 1973 from Newark College of Engineering.[3] Leshner's work experience includes the following areas: 1) development of electronic exhaust emission controls for internal combustion engines; 2) engineering activities for product lines including infant incubators, infant warmers, phototherapy equipment, suction regulators, and oxygen therapy equipment; 3) research and development in engine performance; 4) management of new product development for automobiles; 5) automotive cooling system development and testing; 6) research activities, design, and testing of fuel injection systems, electronic controls and electronic instrumentation; 7) combustion studies in jet engines; and 8) mathematics in a technical secondary school. He lists his areas of "technical expertise" as: automotive engineering, forensic engineering, consumer products, combustion, consulting - forensic engineering and court testimony, medical product design, mechanical products, electrical products, and safety engineering. Defendants' Exhibit B.

Plaintiff employed Leshner to provide an expert report primarily on the issue of causation and to render his opinion as to whether the subject heater was defective and unreasonably dangerous as sold. He concluded that the subject heater was defective and unreasonably dangerous as sold because the warnings provided with the heater were inadequate and the subject heater failed to incorporate a guard around itself in its design to prevent accidental ignition of nearby materials. Defendants' Exhibit A.

---

[3]Defendants have filed for the Court's review a copy of Leshner's curriculum vitae (Exhibit B), selected portions of Leshner's deposition testimony (Exhibit C), and Leshner's Expert Report (Exhibit A); as well as other pertaining to background and analysis by defendants' expert(s). Plaintiff has filed for the Court's review a purported "transcribed recorded statement" of Joe Lubeley (Exhibit 1), plaintiff's entire deposition testimony (Exhibit 2), portions of the deposition testimony of David G. Curry, and portions of the deposition testimony of Michael J. Adams.

Based upon Leshner's deposition and hearing testimony, the Court finds that Leshner never worked for a manufacturer of a heater similar to the one in question. He has never designed nor been involved in the design of a heater similar to the one in question. He has never prepared nor been involved in the preparation of warnings for use of heaters similar to the one in question. He has never operated a heater similar to the one in question.

In preparation for his report, Leshner did not interview the plaintiff or review the plaintiff's deposition testimony; he only discussed the incident with plaintiff's counsel. He only reviewed the investigative report and the statement of Joe Lubeley. He did not examine an exemplar heater of the same type as the subject heater. He did not perform any tests, experiments, etc. regarding the use of the subject heater under similar circumstances as alleged. He did not test fabrics similar to the plaintiff's work pants at various distances, especially at 3 ft. and 4 ft., to determine the rate of ignition; i.e., the combustibility of the material. He did not ascertain the plaintiff's speed, proximity, or time spent in front of the heater and apply these factors in any testing protocol.

As regards the warnings, he testified at the hearing that he only saw one (1) page of a two (2) page warning which accompanied the subject heater. His report concluded that the document he saw lacked sufficient warning of a serious potential hazard and how to avoid such hazard. However, the second page of the document (which Leshner had not seen in preparation of his report), does provide notice of serious potential hazards and uses the words "fire" and "ignition"; plus, an exemplar heater had several safety placards actually attached to the product itself. Defendants' Exhibit E.

As regards the lack of guards, it appears from his hearing testimony, that his actual opinion is not that the subject heater lacked guards as part of its design, but rather, the failure to

5

use some type of guard to create a "safety zone" around the heater makes the subject heater defective and unreasonably dangerous when used.

Defendants have challenged the admissibility of the testimony of Leshner as plaintiff's expert witness and Leshner's report setting out his expert opinion. The defendants' challenge is pursuant to Rule 702 Fed.R.Civ.P.; as well as Daubert, *supra*. and its progeny. Rule 702 provides that:

> "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise."

Thus, the opinion of a qualified expert is admissible if 1) it is based upon sufficient facts or data; 2) it is the product of reliable principles and methods; and 3) the expert has applied the principles and methods reliably to the facts of the case. Pro Service Automotive, L.L.C. v. Lenan Corp., 469 F.3d. 1210, 1215 (8th Cir. 2006); Smith v. Cangieter, 462 F.3d. 920, 923 (8th Cir. 2006); Robinson v. Geico General Ins. Co., 447 F.3d. 1096, 1100 (8th Cir. 2006). Rule 702 allows for the admission of expert testimony from a wide range of fields of expertise; however, it provides a safeguard to prevent confusing a jury with so-called "junk science" by building in a reliability factor. Smith v. Cangieter, at 923.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786 (1993) the Court focused on the admissibility of scientific expert testimony and discussed certain specific factors which would be helpful in determining the reliability of a particular scientific theory or

technique. The Court determined in Daubert that the trial judge has a "gatekeeping" obligation to determine whether expert testimony is admissible under Rule 702.

In Kumho Tire Company, Ltd., et al. v. Carmichael, et al., 526 U.S. 137 (1999), the Court concluded that Daubert's holding setting forth the trial judge's general gatekeeping obligation, applies not only to testimony based on scientific knowledge but also to testimony based on technical and other specialized knowledge. Thus, the gatekeeping duty applies to all expert testimony.

Factors enumerated by Daubert that should be considered by the reviewing court are: 1) whether the theory or technique can be (and has been) tested; 2) whether the theory or techniques has been subjected to peer review and publication; 3) whether the theory or technique has a known or potential rate of error and standards controlling the technique's operation; and 4) whether the theory or technique is generally accepted in the scientific community. Pro Service Automotive, at 1215 *citing* Daubert, 509 U.S. at 592-94; Smith v. Cangenier, at 923 *citing* Daubert, *supra.*

The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence. Lauzon v. Senco Prods., Inc., 270 F.3d. 681, 686 (8th Cir. 2001). Courts have broad discretion regarding the admissibility of expert testimony and "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." Robinson, at 1100; McIntosh v. Monsanto Co., 462 F.Supp.2d. 1025, 1032 (E.D.Mo. 2006). Generally, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Robinson, at 1100 *quoting* Daubert, 509 U.S. at 595; McIntosh, at 1032 *quoting* Daubert, *supra.* "Gaps in an expert witness's qualifications or knowledge generally

7

go to the weight of the witness's testimony, not its admissibility." Robinson, at 1100. However, the reviewing court should not admit evidence that is "connected to existing data only by the *ipse dixit* of the expert." Pro Service Automotive, at 1215-16; Smith v. Cangieter, at 924 *quoting* General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997).

Plaintiff contends that Leshner's lack of testing (of either various fabrics and/or an exemplar of the subject heater) and his lack of any specific education or work experience with this particular type of commercial space heater is irrelevant because his general knowledge of engineering and physics equips him to support the "common knowledge" that a 250,000 BTU heater is capable of serving as an ignition source for combustible materials. Essentially, plaintiff argues that Leshner's testimony reenforces the laymen's understanding that high heat may ignite cotton material. Such an argument is meritless under the standards set down by Rule 702 and Eighth Circuit law post-Daubert.

Firstly, the Court does not question Leshner's expertise in engineering in general. However, there is nothing in his resume or gathered from his deposition and hearing testimony which denotes any expertise in the design, production, or usage of commercial convection drum space heaters putting out a minimum of 250,000 BTUs. Furthermore, there is nothing before the Court which indicates that he utilized his training and education to analyze the circumstances under which the accident is alleged to have occurred; and which assisted him in reaching his conclusions. Frankly, as plaintiff concedes, his conclusions appear not to be based upon his training and education but rather on "common knowledge" that extreme heat can be a source of fire. This alone makes his testimony unnecessary since it hardly assists the jury in understanding the relationship between heat and combustibility.

His lack of experience with the type of heater in question is further highlighted by his failure to conduct any testing whatsoever of a similar heater and similar fabrics under the conditions alleged by the plaintiff. He simply took the plaintiff at his word (via plaintiff's counsel) and read an investigative report, including Lubleley's statement[4], paired that with "common knowledge" and concluded that the heater ignited plaintiff's pants. Leshner has not offered any testing to demonstrate that his theory is correct; so this Court cannot even begin to review whether his theory has been tested, subjected to peer review, has a known or potential rate of error, or has been generally accepted in the engineering field. He does not present any data regarding similar heaters under similar circumstances, nor present any evidence of others who have tested this type of heater as to combustibility of various fabrics under similar circumstances. He simply has not provided any reliable support for his theory that this heater was defective and unreasonably safe when used as intended.

This is not a case of "gaps" in Leshner's testimony which would only subject him to "v]igorous cross-examination". There is a total absence of any record evidence that Leshner used reliable principles and methods or applied them reliably to the alleged facts of this case to form his opinion. All Leshner offers is a general conclusion based upon general principles of engineering and combustion.

---

[4]In his report, Leshner states that "[M]r Joe Lubley **[sic]** witnessed the accident, and reported that Mr. Bland was 3 feet from the heater when his pants ignited." Defendants' Exhibit A. However, in his statement, Mr. Lubeley admits to not seeing the accident.
>    **Q.** Did you see the acicdent **[sic]** happen?
>    **A.** Not exactly see it happen but from what I could tell he was about 3'
>    away from the heater and, I was cleaning the steps at the time, getting
>    ready for the pour and all of a sudden I heard him screaming and I looked
>    over . . .".

Plaintiff's Exhibit 1.

9

His "expertise" is even more lacking as to the issue of warnings and guards. It is clear from his hearing testimony that he reached his conclusion regarding the insufficiency of a warning based upon an incomplete documentation of the warning provided with the subject heater. Furthermore, since he failed to examine an exemplar heater, he was without knowledge of additional warnings actually attached to the heater itself. Finally, since Leshner did no testing of the combustibility of fabrics at various distances from the heater, there is insufficient factual basis for concluding that any barrier at 3 ft or 4 ft would have prevented plaintiff's pants from allegedly going up in flames. He offered no alternative wording for warnings nor any alternative design regarding guards. He offers no analysis as to why a different warning or the presence of guards would have prevented the accident under the circumstances alleged.

Since there is no motion challenging the defendants' experts or the testing they did in this case, the Court will not address the merits of their testing protocol or the conclusions they reached. However, their ability to obtain an exemplar heater and run tests on a variety of fabrics at various distances, under differing factors (such as distance from heater, speed of walking past heater, "stop and go" walking past heater) indicates to this Court that Leshner was not without the ability and means to run similar tests himself. In this case, his general knowledge is not enough for the Court to allow him to testify as an expert, especially on causation.

Plaintiff has failed by a preponderance of the evidence to meet the standards of Rule 702 Fed.R.Civ.P. and <u>Daubert</u>, *supra.* and its progeny; thus, plaintiff's expert Michael Leshner will not be allowed to testify as an expert and his report is inadmissible as an expert report.

Accordingly,

**IT IS HEREBY ORDERED** that defendant RSC' motion to strike plaintiff's expert Michael Leshner (#52) and defendant H.C. Beck's motion to strike plaintiff's expert Michael

Leshner (#53) be and is **GRANTED.**

Dated this ___7th___ day of March, 2007.

_____
SENIOR UNITED STATES DISTRICT JUDGE